UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER DIAZ,

                         Petitioner,

         -vs-                            **No. 1:12-CV-0075(MAT)**
                                         **DECISION AND ORDER**

DALE ARTUS, Sup. of Wende
Correctional Fac.,

                         Respondent.

---

## I.   Introduction

Proceeding <u>pro</u> <u>se</u>, Christopher Diaz ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is in state custody in violation of his federal constitutional rights. Petitioner is serving an aggregate sentence of 15 years pursuant to a judgment of conviction entered December 14, 2005, in New York State Supreme Court, Monroe County (Sirkin, A.J.), following a jury trial. Petitioner was convicted of Criminal Sexual Act in the First Degree (N.Y. Penal Law ("P.L.") § 130.50(3)), Sexual Abuse in the First Degree (P.L. § 130.65(3)), and Endangering the Welfare of a Child (P.L. § 260.10(1)).

## II.   Factual Background and Procedural History

### A.   Petitioner's Criminal Proceedings

In 2005, Petitioner lived in an apartment building in the Town of Irondequoit, with his girlfriend, Lindsay Ziegler ("Ziegler") and her three children. Ten-year-old TW lived across

the hall with her mother, and her two younger siblings. Petitioner sometimes would babysit for TW and her younger siblings. On February 26, 2005, while TW was inside Petitioner's apartment, he removed her shirt and touched her breasts, pulled down her shorts and underwear, and inserted his finger into her vagina. Petitioner later kissed TW on the lips and told TW not to tell her mother about what he had done.

On the afternoon of March 2, 2005, TW's mother went to the store with her two younger children and left TW at home to do her homework. Prior to leaving, TW's mother let Petitioner know she was going out and that TW was by herself. After she left, Petitioner went into TW's apartment and brought her into the kitchen. He pulled her shorts down and was about to touch her vagina when Ziegler called for him. Petitioner went to the door and blocked it while TW pulled her clothes back on. Petitioner went home but returned to TW's apartment a short time later and asked if she had any bleach. TW said there might be some in the basement and proceeded downstairs to look, with Petitioner following her.

Once they were in the laundry room, Petitioner asked her if she had ever "sucked anyone's penis before." T.160. When she said "no," Petitioner grabbed her finger, put it in his mouth, sucked it, and said, "That's how you do it." Id. Petitioner then pushed TW's head down near his crotch, inserted his penis into her

2

mouth, and moved it back and forth. Petitioner "rocked back and forth" like that for a bit and then stopped. He went into the corner where TW saw him "pulling back and forth on his penis" until "some white stuff fell on the floor." T.161. Petitioner told TW not to tell anyone. TW went back upstairs to her apartment. Later that day, Petitioner went up to TW's apartment, sat next to her on the sofa, pulled down her shorts, and inserted his finger into her vagina. Again, Petitioner told TW not to tell anyone.

On March 9, 2005, while TW was inside Petitioner's apartment, Petitioner attempted to put his hand into TW's vagina. When TW said that she had her period, Petitioner rolled his eyes and stopped.

On March 10, 2005, TW and her mother watched a television movie about a girl who had been sexually molested. After the movie, TW told her mother about what Petitioner had done, and her mother called the police.

The following day, the police arrested Petitioner at work. After waiving his rights, Petitioner made a number of inculpatory oral and written statements to Investigator Jeffrey Bove ("Inv. Bove"). Petitioner told Inv. Bove that about a week earlier, he had asked TW to borrow some bleach, but she could not find it in her kitchen. TW told Petitioner that there might be some downstairs in the basement laundry room. While they were still in

the kitchen, Petitioner "pulled [TW's] shirt apart" and "touched her breasts." T.287. As they walked down the stairs to the laundry room, Petitioner took his penis out of his pants and "play[ed]" with it. Id. When they entered the laundry room, Petitioner asked TW "if she ever sucked on any one before, and she said no." T.287-288. Petitioner then put TW's finger into her mouth and moved her finger back and forth. TW got on her knees in front of him, but when Petitioner heard his daughter coming down the steps, TW stood up. Petitioner put his penis back in his pants and told TW not to tell anyone. At that point, Ziegler walked into the laundry area and asked what TW was doing there. TW explained that she was trying to get the bleach but could not reach it. Petitioner then held his daughter up and she tried to get the bleach that was on the other side of a wire fence, but she dropped the bleach container. After Ziegler, TW and Petitioner's daughter left, he stayed in the basement by himself and masturbated. Petitioner signed a written statement summarizing his admissions to Inv. Bove.

At trial, however, Petitioner claimed that his confession to Inv. Bove was the product of coercion and psychological pressure. Petitioner testified that Inv. Bove said that he was "going to nail [Petitioner]" and that "[t]he only way you're leaving here today is if you write down what your story says, [and it] matches

what [TW's] story says." T.344-345, 348. Petitioner denied having any contact of a sexual nature with TW. T.358.

During the course of the police investigation, Officer Alan Laird ("Officer Laird") went to the basement of Petitioner's apartment building on March 10, 2005, and used an alternative light source to see if he could detect any bodily fluids. Certain spots by the western wall of the basement storage area fluoresced. However, no spots fluoresced in the areas on the floor or behind the basement door, where TW said that Petitioner forced her to perform oral sex and later masturbated. Officer Laird took swabs of the fluorescing areas and sent them for testing. He returned to the crime scene on June 17, 2005, and again used the alternative light source. That time, he saw three fluorescing spots on the floor near the western wall.

The parties entered to the following evidentiary stipulation regarding the results of the DNA testing conducted on the swabs collected by Officer Laird: no sperm was found on the swabs taken from the basement on March 10, 2005; some of the swabs taken from the basement on June 17, 2005, contained sperm; DNA testing on the June 17, 2005 sperm samples revealed DNA profiles from two different, unknown males; and DNA testing indicated that Petitioner was not the source of either of the DNA profile obtained from the June 17, 2005 swabs. T.311; SR.170-172.

The jury found Petitioner guilty of the charges based on events alleged to have occurred on March 2, 2005, i.e., first-degree criminal sexual act, first-degree sexual abuse, and endangering the welfare of a child. The jury acquitted Petitioner of all of the remaining counts, which were based on the alleged events of February 26, 2005, and March 9, 2005.

On December 14, 2005, Petitioner was sentenced to concurrent determinate prison terms of 15 years for the first-degree criminal sexual act conviction, 5 years for the first-degree sexual abuse conviction, and 1 year for the child endangerment conviction. The 15-year and 5-year sentences included 5-year terms of post-release supervision.

## B. Post-Conviction Proceedings

Petitioner's conviction was unanimously affirmed on direct appeal. People v. Diaz, 52 A.D.3d 1230 (4th Dep't), lv. denied, 11 N.Y.3d 831 (2008). His pro se motion for a writ of error coram nobis in the Appellate Division was unsuccessful. People v. Diaz, 66 A.D.3d 1499 (4th Dep't 2009), lv. denied, 13 N.Y.3d 938 (2010). He also filed a pro se motion to vacate the judgment pursuant to C.P.L. § 440.10 in Monroe County Supreme Court (Marks, J.) ("the 440 Court"), which was denied. The Appellate Division granted Petitioner's application for leave to appeal the 440 Court's order, but ultimately affirmed the 440 Court's order

for the "reasons stated in the decision." <u>People v. Diaz</u>, 112 A.D.3d 1348 (4th Dep't 2013), <u>lv. denied</u>, 22 N.Y.3d 1156 (2014).

This timely habeas petition followed. Respondent received permission to file an oversized brief and to file the state court records under seal to protect the victim's privacy. After Respondent filed his answer, Petitioner filed a reply.

## III.    Discussion of the Petition

### A.   Preclusion of Ziegler's Testimony

Petitioner contends that he was denied his right to present a defense because the trial court precluded him from calling Ziegler, his then-girlfriend, as a witness. Before jury selection, the prosecutor provided the court with a list of individuals whose names might come up at trial. T.5. After defense counsel added three names to that list, the following colloquy ensued:

> [PROSECUTOR]: My understanding from [Defense Counsel] is one or more of those witnesses may be testifying to what I would deem to be alibi testimony and I would ask the Court to preclude it because we were not served with alibi--
>
> THE COURT: It's a little premature to do that. You can't have alibi testimony without a notice. Usually make an application to the Court.
>
> [DEFENSE COUNSEL]: I don't think it's going to be alibi.
>
> THE COURT: That's fine. I don't want to engage in--

7

[PROSECUTOR]: I just don't want the testimony coming out, your Honor, because I believe that they're saying that it couldn't have happened because his wife was with him, and that's alibi.

THE COURT: That's alibi. It's that simple. Okie-dokie. . . .

T.11-12. The parties moved on to other matters, and trial counsel never sought to have Ziegler testify.

In his C.P.L. § 440.10 motion, Petitioner argued that during this colloquy, the trial court had granted the prosecution's motion to preclude trial counsel from calling Ziegler as a witness, which deprived him of his constitutional right to present a defense. The 440 Court rejected this claim pursuant to C.P.L. § 440.10(2)(c), finding that it was record-based and could have been raised on direct appeal. The Appellate Division affirmed the 440 Court's denial of relief, for the "same reasons" stated in the 440 Court's order. Respondent has asserted the defense of procedural default, arguing that C.P.L. § 440.10(2)(c) constitutes an adequate and independent state ground for the 440 Court's ruling.

"If a state court decision 'rests on a state law ground that is independent of the federal question and adequate to support the judgment,' Coleman v. Thompson, 501 U.S. 722, 729 (1991), [the habeas court] will not review the issue." Bierenbaum v. Graham, 607 F.3d 36, 47 (2d Cir. 2010) (citing Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007)). Determining whether

8

the state law ground is independent and adequate to support the judgment is the obligation of the federal habeas court. <u>Garvey v. Duncan</u>, 485 F.3d 709, 713-14 (2d Cir. 2007) (citing <u>Lee v. Kemna</u>, 534 U.S. 362, 376 (2002)).

Here, the 440 Court's reliance on C.P.L. § 440.10(2)(c) was clearly independent of its consideration of any federal question. Indeed, the 440 Court did not consider the merits of Petitioner's claim regarding the trial judge's preclusion of Ziegler as a witness.

Turning to the issue of adequacy, the procedural bar relied upon the 440 Court is codified and stated in mandatory terms. <u>Reyes v. Keane</u>, 118 F.3d 136, 139 (2d Cir. 1997) (citations omitted). Specifically, C.P.L. § 440.10(2)(c) states that a court "must deny" a § 440.10 motion where the movant unjustifiably failed to raise a claim on direct appeal despite a sufficient record to have permitted appellate review of the claim. Petitioner's claim regarding the alleged preclusion of Ziegler's testimony does not rely on any evidence <u>dehors</u> the record but instead is a solely record-based claim. Therefore, the state courts' reliance on C.P.L. § 440.10(2)(c) was an "adequate" ground for dismissal of this claim. <u>See</u>, <u>e.g.</u>, <u>Dowtin v. Cohen</u>, Nos. 99-CV-323, 03-MISC-0066, 2005 WL 697981, at *22 (E.D.N.Y. Mar. 25, 2005) (petitioner's claim that the trial court erroneously prevented him from calling a witness was procedurally

9

defaulted where state court relied C.P.L. § 440.10(2)(c), to dismiss it); Smith v. Artus, 03Civ.6982(JSR)(GWG), 2004 WL 789769, at *16 (S.D.N.Y. Apr. 14, 2004) (C.P.L. § 440.10(2)(c) was adequate and independent state ground for dismissal of habeas claims where "[n]one of the claims raised in the CPL § 440.10 application relied upon evidence outside of the record").

Petitioner may overcome the procedural default of his claim regarding Ziegler as a defense witness if he can demonstrate either cause for the default and resultant prejudice, or that this Court's failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 749B50 (citations omitted). In response to Respondent's procedural default argument, Petitioner asserts that "[t]he New York Court of Appeals established for the first time in People v Evans, 16 N.Y.3d 571 (2011), that a remedy is needed so that criminal defendants are not denied relief where their claims presented involve matters appearing on the record and matters outside the record." Reply at 2. However, Petitioner's claim regarding Ziegler as a defense witness is not a claim that is "partially" based on matters outside the record; it is entirely a record-based claim. Moreover, the portion of People v. Evans to which Petitioner appears to refer is the dissenting opinion which did not create any new rule of law. In any event, Petitioner did not attempt to demonstrate cause or prejudice in his reply papers;

nor did he attempt to show that a fundamental miscarriage of justice will occur if the Court does not consider his claim. The Court finds to basis to excuse Petitioner's procedural default and dismisses this claim as procedurally barred.

### B.   False Testimony by Officer Laird

Petitioner contends, as he did in support of his C.P.L. § 440.10 motion, that the prosecutor suborned perjury by allowing Officer Laird to testify falsely about his collection of evidence. See, e.g., SR.628-663. The 440 Court rejected this claim on the merits, finding that Petitioner had failed to establish that Officer Laird's testimony was false. SR.552. The Appellate Division affirmed the 440 Court's denial of relief "for the reasons stated" by the 440 Court in its decision. See SR.825. As discussed further below, this ruling was not an incorrect application of federal constitutional law.

To challenge a conviction based on the prosecutor's use of allegedly false testimony, a habeas petitioner must prove that "(1) . . . false testimony was introduced, (2) . . . that testimony either was or should have been known to the prosecution to be false, (3) . . . the testimony went uncorrected, and (4) . . . the false testimony was prejudicial in the sense defined by the Supreme Court in [United States v.] Agurs[, 427 U.S. 97 (1976)]." Shih Wei Su v. Filion, 335 F.3d 119, 127 (2d Cir. 2003) (citing Agurs, 427 U.S. at 103). In Agurs, the Supreme Court

explained that perjured evidence would be "prejudicial" if "'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Drake v. Portuondo, 321 F.3d 338, 345 (2d Cir. 2003) (quoting Agurs, 427 U.S. at 103).

Petitioner's claim of alleged perjury relates to Officer Laird's testimony regarding the swab samples he obtained on June 17, 2005, when he made a second visit to the crime scene. As noted above, the parties stipulated that there was no semen and no other type of physical evidence containing Petitioner's DNA in the samples taken on March 10, 2005. The parties also stipulated that there was semen from two different unknown males in the samples collected on June 17, 2005, but that Petitioner's DNA did not match either of the samples. Thus, Petitioner was ruled out as a contributor of the semen samples obtained on June 17, 2005.

Despite these exculpatory test results, Petitioner contends that Officer Laird's testimony was false and prejudicial. Petitioner asserts that this perjury is established based on the results of several F.O.I.L. requests for chain of custody reports of all swabs collected by the Irondequoit Police Department ("IPD") for CR 05-13135 and submitted to the Monroe County Public Safety Laboratory ("Laboratory") for testing. Petitioner's argument is difficult to follow, but he apparently believes that only swabs collected on March 2005 were submitted by the police

department to the Laboratory for testing, and there "is no other submission to the property clerk of the [IPD] of any other swabs taken from the crime scene on 6/17/2005, showing the police report with a tech date of 6/17/2005, that Officer Laird prepared, to be false." SR.630 (citing SR.650-653). Plaintiff also appears to place great importance on a handwritten statement from a person named Paula Villa ("Villa"), SR-767, recounting that on February 9, 2010, Villa called the [IPD] on behalf of Petitioner and spoke to an employee named Michelle Higgins ("Higgins") "about the report that [Petitioner] requested from 6-17-2005." According to Villa, Higgins told her that "she had no F.O.I. [sic] on that date." SR.767. However, it is not clear from Villa's statement whether she is asserting that Higgins informed her that she had no responsive records to a state Freedom of Information Law ("F.O.I.L.") request, or no pending F.O.I.L. request from Petitioner concerning records from June 17, 2005.

The Court has examined the records in question and agrees with the 440 Court that they do not establish perjury by Officer Laird. Nor do they support Petitioner's version of events positing that the Laboratory only tested swabs obtained on March 10, 2005. A Property Custody Report dated June 17, 2005, SR.653, indicates that Officer Laird collected six swabs from the basement (labeled 2, 3, 4, 5, 6, and 7) and one control swab (labeled 1) from Petitioner on that date. Then, the Laboratory's

13

chain of custody document for Petitioner's case (SR.655-657) indicates that seven samples (numbered by the Lab as Items 8, 9, 10, 11, 12, 13, and 14) were received June 24, 2005; these would correspond to the seven swabs collected by Officer Laird on June 17, 2005. SR.656-657. The Laboratory's report dated July 1, 2005, SR.669-671, sets out the test results for Items 8, 9, 10, 11, 13, 13, and 14, i.e., that sperm was detected on Items 10, 13, and 14. SR.670. The swabs containing sperm were retained for DNA analysis by the Laboratory, the results of which indicated that Petitioner could not have been the source of the DNA in Items 10, 13, and 14. T.682. The Court is hard-pressed to see how the above-discussed documents even remotely undermine the veracity of Officer Laird's testimony about the evidence he collected, the results of the DNA testing, or the contents of the evidentiary stipulation.

It bears emphasizing that Petitioner is not accusing Officer Laird of falsely testifying that he found DNA evidence that ultimately was determined to inculpate Petitioner. Rather, Petitioner is arguing that Officer Laird lied about finding DNA evidence that the prosecution's own DNA experts determined could not have come from Petitioner. Thus, even assuming for the sake of argument that Plaintiff has correctly interpreted the police investigative reports and laboratory test results, and that Officer Laird testified falsely about his June 17, 2005, visit to

14

the crime scene, the Court cannot find "any reasonable likelihood that the false testimony could have affected the judgment of the jury[,]" Agurs, supra, because none of it actually inculpated Petitioner. Petitioner's perjury claim must therefore cannot provide a basis for habeas relief.

### C.  Prosecutorial Misconduct

On direct appeal, Petitioner's appellate counsel identified approximately eleven instances of alleged misconduct during the prosecutor's direct examination of TWs mother, cross-examination of Petitioner, and closing argument. The Appellate Division held that Petitioner "failed to preserve for [its] review the majority of the alleged instances of prosecutorial misconduct (see [N.Y. Crim. Proc. Law] 470.05[2])[,]" and it "conclude[d] that, in any event, 'any improprieties were not so pervasive or egregious as to deprive [him] of a fair trial[.]'" Diaz, A.D.3d at (quotation omitted).

Respondent argues that this claim is procedurally defaulted based upon the Appellate Division's reliance on C.P.L. § 470.05(2) as an adequate and independent state ground for dismissal. However, the Court declines to find a procedural default here because it is unclear which instances of prosecutorial misconduct the Appellate Division found unpreserved, making it impossible for the Court to say that the Appellate Division's order contains a clear and plain statement

of reliance upon a state-law ground. See, e.g., McCaskell v. Keane, No. 97-CV-2999(RPP)(GWG), 2001 WL 840331, at *14 (S.D.N.Y. July 26, 2001) ("[T]he Appellate Division's use of the equivocal term 'largely unpreserved' bars reliance on the adequate and independent state ground because the Appellate Division did not 'clearly and expressly,' Harris v. Reed, 489 U.S. [255,] 263 [(1989)], state that its judgment rested solely on a State procedural bar.") (citations omitted). The Court accordingly turns to a consideration of the merits of Petitioner's claim.

In reviewing a claim of prosecutorial misconduct on habeas corpus, the appropriate standard of review is "the narrow one of due process, and not the broad exercise of supervisory power." Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (citing Darden v. Wainwright, 477 U.S. 168, 181 (1986)). The relevant question is whether "the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986). Generally, inappropriate prosecutorial comments, standing alone, are insufficient to reverse a conviction. United States v. Young, 470 U.S. 1, 11 (1985). Rather, the objectionable remarks and questions must be examined within the context of the trial as a whole to determine whether the prosecutor's behavior amounted to prejudicial error. Id. In other words, the Court must consider

the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly. Id. at 12.

The Court agrees with Petitioner that several of the prosecutor's comments were improper. Indeed, the prosecution on direct appeal conceded that the trial assistant should have refrained from making some of the challenged comments. However, considering the totality of the circumstances, as it is required to do, the Court cannot find that prejudicial error occurred. See Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994) (stating that a habeas petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's [misconduct] had a substantial and injurious effect or influence in determining the jury's verdict") (quotation omitted). To the contrary, the jury acquitted Petitioner of many of the charges, "reinforce[ing] [the] conclusion that the prosecutor's remarks did not undermine the jury's ability to view the evidence independently and fairly." Young, 470 U.S. at 18 n. 15. Because the complained-of comments and questions did not render Petitioner's trial "so fundamentally unfair as to deny him due process[,]"; see Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974), habeas relief is not warranted.

### D. Ineffective Assistance of Trial Counsel

Petitioner contends that trial counsel was ineffective because he (1) failed to object to trial court's ruling

precluding Ziegler from testifying; (2) failed to visit the crime scene; (3) failed to conduct an adequate investigation concerning the DNA evidence; and (4) entered into the evidentiary stipulation regarding the DNA test results of the semen samples obtained from the crime scene. Petitioner raised these as stand-alone claims in his C.P.L. § 440.10 motion, and the 440 Court denied them pursuant to C.P.L. § 440.10(3)(b), finding they had been raised in his coram nobis application asserting that appellate counsel was ineffective for failing to assert on appeal that trial counsel was ineffective. Respondent argues that the 440 Court's reliance on C.P.L. § 440.10(3)(b) constitutes an adequate and independent state ground barring consideration of the claims. The Court is inclined to disagree, but need not resolve this potentially complex question because Petitioner's ineffective assistance claims are easily dismissed on the merits.

To prevail on a claim of ineffective assistance of counsel, "a defendant must first show that his counsel's performance was deficient and must then show that the deficiency caused actual prejudice to his defense.@ Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Deficient performance means that the attorney's conduct fell "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The requisite prejudice is established by showing a "reasonable probability" that, but

18

for counsel's deficiency, "the result of the proceeding would have been different." Id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Although Petitioner has never submitted an affidavit from Ziegler indicating what her testimony would have been or that she in fact was willing to testify, the Court assumes arguendo that Ziegler's testimony would "establish that [the March 2, 2005 incident] could not have happened the way [TW] testified because if [Petitioner] were ever alone with her in the basement laundry room, it was only for a very brief period of time - too brief of a time period for anything of a sexual nature to have occurred." SR.500. However, Petitioner's statement to the police, which was admitted at trial, contained admissions that Petitioner was alone in the laundry room with TW. SR.087 ("Diaz said he sat on a table . . . [TW] tried to reach some bleach. . . . . [TW] could not reach the bleach and Diaz said that his young daughter and girlfriend came down."). Also, Petitioner's testimony was ambiguous as to this issue. At some points, it appears that Ziegler immediately followed Petitioner down into the basement with TW, but at others, it is apparent that Petitioner was left alone with TW. T.371-373 (stating what when Ziegler comes into the laundry room, he was seated on a folding table). As appellate

19

counsel explained, this reference to the moment "when" Ziegler entered the room "indicates that at some point, she was not in the room with [Petitioner] and [TW]." SR.501. Thus, Petitioner's own statements were inconsistent, and were not wholly congruent with Ziegler's expected testimony. Introducing Ziegler's testimony could have highlighted these inconsistencies to the defense's detriment. In addition, the trial court allowed testimony from TW's mother that Petitioner and Ziegler were having relationship troubles around the time of the incident. Trial counsel could have decided it was not in Petitioner's best interest to subject Ziegler to potentially damaging cross-examination about their relationship. In short, there were valid strategic reasons for not pursuing the option of placing Ziegler on the stand. Therefore, the Court cannot find that trial counsel performed in an objectively unreasonable manner in regards to the issue of calling Ziegler as a defense witness.

Petitioner's remaining contentions all relate to the DNA evidence found at the crime scene. As noted above, testing conducted by the prosecution established that Petitioner's sperm was <u>not</u> recovered from the basement of TW's apartment building. SR.680-82; T.311. The parties agreed to stipulate to that effect. Thus, the results of the prosecution's DNA testing was favorable to Petitioner, and the stipulation to which defense counsel agreed does not contain evidence that was harmful to Petitioner's

20

case. Petitioner simply cannot demonstrate that he was prejudiced by counsel's failure to conduct his own crime scene investigation and DNA testing or counsel's agreement to the evidentiary stipulation concerning the DNA test results. Where, as here, Petitioner cannot demonstrate prejudice, there is no need for the Court to discuss the reasonableness of counsel's performance.

### E.    Ineffective Assistance of Appellate Counsel

Strickland's two-pronged test applies to the evaluation of appellate counsel as well as trial counsel. Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (citations omitted). A petitioner must demonstrate that appellate counsel "'omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" Id. (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)).

Petitioner contends appellate counsel was ineffective because (1) he did not assert that Petitioner was denied his right to present a defense by the alleged preclusion of Ziegler's testimony; and (2) one of appellate counsel's associates, a then-newly-admitted attorney, helped appellate counsel prepare Petitioner's brief. With regard to the claim pertaining to Ziegler, the Court cannot say that appellate counsel was unreasonably deficient in declining to include this claim. As discussed above, there were valid strategic reasons for declining to call Ziegler. Furthermore, the claim was not preserved by a

contemporaneous objection from trial counsel. Courts in this Circuit have repeatedly held that appellate counsel is not ineffective for raising an unpreserved issue. See, e.g., Richburg v. Hood, 794 F. Supp. 75, 77 (E.D.N.Y. 1992) ("This court cannot conclude that the decision by appellate counsel to raise an unpreserved issue on appeal and to address this issue to the interest-of-justice jurisdiction of the appellate court constituted 'representation . . . below an objective standard of reasonableness.'") (quoting Strickland, 466 U.S. at 687–88, 694).

As to Petitioner's speculative complaints about the then-newly-admitted attorney who assisted appellate counsel, the record contains a well-reasoned, thorough letter from this attorney to Petitioner. The letter belies Petitioner's complaint that appellate counsel's associate's work-product was substandard. In short, this claim of ineffectiveness is patently without merit.

### F.  Legal Insufficiency of the Evidence

On direct appeal, the Appellate Division held that Petitioner "failed to preserve for [its] review his contention that the evidence is legally insufficient to support the conviction inasmuch as he failed to renew his motion for a trial order of dismissal after presenting evidence[.]" Diaz, 52 A.D.3d at 1231 (citing People v. Hines, 97 N.Y.2d 56, 61 (2001)). The Appellate Division went on to hold that the contention was

without merit, id. (citation omitted). Respondent argues that the legal insufficiency claim is procedurally defaulted based upon the Appellate Division's reliance on an adequate and independent state ground to dismiss it.

Since the Appellate Division expressly relied on the lack of preservation required under People v. Hines, supra, as a separate basis for its decision regarding Petitioner's legal insufficiency claim, the "independent" criterion is met. The fact that the Appellate Division ruled in the alternative on the merits of Petitioner's legal insufficiency claim is of no moment. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

Turning to the "adequacy" criterion, the rule in New York State is that on direct appeal, "an insufficiency argument may not be addressed unless it has been properly preserved for review during the trial." Hines, 97 N.Y.2d at 61. "[A] defendant who does not rest after the court fails to grant a motion to dismiss at the close of the People's case, proceeds with the risk that he will inadvertently supply a deficiency in the People's case[.]" Id. (quotation omitted). Under New York law, because Petitioner

presented a defense, any motion for a trial order of dismissal made by trial counsel prior to the defense case was "nullified by the presentation of evidence on [Petitioner's] behalf." <u>Mills v. Girdich</u>, 614 F.Supp.2d 365, 394 (W.D.N.Y. 2009). Trial counsel did not make a new motion for a trial order of dismissal after the defense rested, and <u>Hines</u> dictates that any challenge to the legal insufficiency of the evidence was not properly preserved for appellate review. The Court finds that rule set out in <u>Hines</u> and relied upon by the Appellate Division in disposing of Petitioner's appeal is a firmly established and regularly followed state practice sufficient to satisfy the "adequate" prong of the "adequate and independent" test. <u>Montgomery v. Wood</u>, 727 F.Supp.2d 171, 181 (W.D.N.Y. 2010) (analyzing the "adequacy" of the <u>Hines</u> preservation rule for legal insufficiency claims in habeas petition where petitioner testified at trial and presented multiple defense witnesses but did not make a motion for a trial order of dismissal after resting) (citations omitted).

For the same reasons discussed above in this Decision and Order, the Court finds that Petitioner has failed to demonstrate cause for the procedural default of his legal insufficiency claim, or prejudice attributable thereto. Likewise, Petitioner has failed to show that a fundamental miscarriage of justice will occur if this Court does not entertain his claim. Accordingly,

the Court dismisses Petitioner's legal insufficiency claim as subject to an unexcused procedural default.

### G.   Weight of the Evidence

As Respondent argues, and as Petitioner conceded in his reply papers, his weight of the evidence claim is not cognizable of habeas review. <u>See</u>, <u>e.g.</u>, <u>McKinnon v. Superintendent, Great Meadow Corr. Fac.</u>, 422 F. App'x 69, 75, 2011 WL 2005112, at *4 (2d Cir. 2011) (unpublished opn.) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus[.]") (citing, <u>inter alia</u>, <u>Correa v. Duncan</u>, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001)).

### H.   Harsh and Excessive Sentence

In his reply papers, Petitioner also has conceded that his claim based on the harshness and excessiveness of his sentences is not cognizable on federal habeas review, given that his sentences are well within the applicable statutory ranges. <u>White v. Keane</u>, 969 F.2d 1381, 1382 (2d Cir. 1992) (<u>per</u> <u>curiam</u>) (dismissing as non-cognizable habeas petitioner's claim regarding the length of his sentence because "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law") (citation omitted).

**IV.  Conclusion**

For the foregoing reasons, Petitioner's request for a writ of habeas corpus is denied, and the petition (Dkt #1) is dismissed with prejudice. Because Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

**SO ORDERED.**

S/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED:      January 22, 2015
            Rochester, New York